IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GRESHAM, | ) | CASE NO. 1:13-cv-01178 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff James Gresham ("Plaintiff" or "Gresham") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner"), denying his applications for social security disability benefits.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc. 12.  Because the Administrative Law Judge ("ALJ") failed even to consider one of the two opinions rendered by Gresham's treating psychiatrist, this Court cannot conduct a meaningful review of the Commissioner's decision and is unable to conclude that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

Gresham filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on August 25, 2010.[1]  Tr. 11, 64-65, 91-92, 186-197.  He alleged a

---

[1] The ALJ found that Gresham filed for disability benefits on August 25, 2010.  Tr. 11.  This finding is supported by the record.  Tr. 64-65, 91-92.  Gresham indicates that he filed on August 31, 2010 (Doc. 15, pp. 1); this date is also

disability onset date of December 31, 2009 (Tr. 186, 190, 219), and claimed disability due to post-traumatic stress disorder ("PTSD"), personality disorder, and low back pain.  Tr. 121, 125, 132, 134, 223.  After initial denial by the Social Security Administration (Tr. 121-27), and denial upon reconsideration (Tr. 132-36), Gresham filed a request for a hearing (Tr. 137-38) and attended a hearing before ALJ Patrick J. Rhoa on February 17, 2012 (Tr. 26-63).

In his April 30, 2012 decision, ALJ Rhoa determined that Gresham had not been under a disability from December 31, 2009, through the date of the decision.  Tr. 8-25.  Gresham requested review of the ALJ's decision by the Appeals Council. Tr. 7.  On March 27, 2013, the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. Tr. 1-7.

## II. Evidence

### A.     Personal, educational and vocational evidence

Gresham was born in 1957.  Tr. 32.  He obtained a GED during military service and a license for private security after concluding his military service.[2]  Tr. 34.  Gresham's past relevant work includes work as a security guard and a security guard supervisor. Tr. 35-40. Gresham lives alone in an apartment provided through the VA.  Tr. 32.

---

supported by the record (Tr. 186-97).  Gresham does not raise a specific objection to the ALJ's finding with respect to the filing date.

[2] Gresham was in the Army from 1977-1984, the National Guard from 1984-1986, the Army Reserves from 1986-2003, and on active duty from 2003-2006.  Tr. 35, 295-96, 754.

**B.  Medical evidence[3]**

After being discharged from the military in 2004 Gresham was treated mainly by doctors through the VA.  Gresham's treating psychiatrist through the VA was Dr. Jane Domb.  In addition to treating him, she offered opinions on his ability to work.[4]

**1.  Treatment History**

Gresham was diagnosed with PTSD in 2005 while serving in the military.[5]  Tr. 708, 752.  Gresham attributes his PTSD to the traumatic experiences he encountered while serving in the military.  Tr. 815-16.  Gresham complained to a neurologist in early 2009 of sleep problems due to combat-related nightmares. Tr. 324-30.  In April 2009, neurologist Dr. Mark Walker prescribed Prazosin to Gresham for combat-related nightmares.  Tr. 330.  After being violently robbed in August of 2009, Gresham was hospitalized and reported suicidal thoughts and depression.  Tr. 586-589.  Gresham was admitted to inpatient addiction treatment for cocaine dependency in September 2009 and then discharged for outpatient treatment in October.  Tr. 295-96.  Dr. Indiradevi Vellanki diagnosed Gresham with alcohol and cocaine dependence, substance induced mood disorder, anti-social personality traits, and PTSD.  Tr. 295-96.  On a number of occasions, Gresham admitted to owning two handguns and two knives, and he stated that he had been sleeping with the knives since he returned from Iraq.  Tr. 298, 454, 480, 564.

In early 2010, Gresham reported that, despite sobriety, he experienced worsening nightmares and aggression.  Tr. 678-80.  In September 2010 — after being off his medications

---

[3] Treatment history and opinion evidence regarding Gresham's physical limitations will not be discussed in-depth as the issues before the Court relate to his mental—not physical—limitations.

[4] Dr. Domb's treatment notes and opinion evidence are set forth more fully below.

[5] In March 2009, Gresham was screened for PTSD and the test came back negative.  Tr. 340.  However, Gresham continued to be diagnosed with PTSD after March 2009.  *See* Tr. 295, 752, 756, 843.

for a month — Gresham complained of nightmares, hypervigilance, flashbacks, and feelings of anxiety.  Tr. 752-73.  Psychiatrist Dr. Youssef Mahfoud diagnosed Gresham with PTSD and depression, confirmed that he was in remission from alcohol and cocaine, and renewed his prescriptions for sertraline, trazodone, and Prazocin.  Tr. 752-756.  Dr. Mahfoud also assigned Gresham a GAF score of 55.[6]  Tr. 756.  In October 2010, Gresham admitted to isolating himself because being around other people made him feel on edge.  Tr. 741.  A social worker evaluated Gresham and determined that he continued to experience symptoms of PTSD such as anger, hypervigilance, and isolation, and assigned a GAF score of 55.  Tr. 745.

Gresham reported experiencing mood swings and being anxious in February 2011 such that he would bite his nails until they bled.  Tr. 708.  He also reported that he did not socialize any more, stating that he did not like to be around others.  Tr. 708.  Gresham reported in March 2011 that he believed his medications helped to keep his emotions under control.  Tr. 718.  In April 2011, Gresham explained that he had a physical altercation with his son, but that he believed his medication helped with his anger.  Tr. 714, 716.  In July 2011, Dr. Domb noted that Gresham had described a recent incident in which he "sent a guy to the hospital" in an outburst of anger.  Tr. 781.  However, Gresham stated that his mood was better with his medications but he continued to have difficulty sleeping and difficulties with anger.  Tr. 781-82.  At the appointment, Dr. Domb increased Gresham's trazodone prescription to help with his sleep problems.  Tr. 782.  In November 2011 Gresham was referred for intensive PTSD treatment for symptoms of anxiety, difficulty concentrating, nightmares, flashbacks, anger, and isolation.  Tr. 843.

---

[6] GAF (Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  See American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

In early 2012 Gresham was still experiencing feelings of irritability, nightmares, suspiciousness, and anger, and reported that his medications seemed to be less effective.  Tr. 861. Social worker Gary Weinsheimer assigned Gresham a GAF score of 63.[7]  Tr. 817-18.  In March 2012 Dr. Domb saw Gresham for psychiatric follow up and diagnosed him with PTSD and a mood disorder.  Tr. 860-862.  She stated that her treatment plan goals were to prevent Gresham's PTSD symptoms, eliminate his explosiveness, and eliminate his nightmares.  Tr. 860.  Dr. Domb noted that Gresham had become angry with the ER staff when his mother was hospitalized for 24 hours due to a stomach ulcer.  Tr. 861. Further, Gresham told her that, although his medications had helped him control his anger for some time, "I seem to have gotten used to them."  Tr. 861. Gresham had been previously assigned a GAF score of 65 in October 2011 by counselor Cynthia Thomas but, in March 2012, Dr. Domb lowered Gresham's GAF to 55.  Tr. 861.  She continued certain medications and increased Gresham's sertraline dosage.  Tr. 861.

### 2.    Opinion Evidence

#### a.    Treating psychiatrist

<u>Jane Domb, M.D.</u>

Dr. Domb, a VA psychiatrist, began treating Gresham in December 2010.  Tr. 728.  In 2011[8] she completed a Medical Source Statement wherein she rated Gresham's ability in 21 categories.[9]  Tr. 705-06.  She rated Gresham's mental capacity as "poor" in 14 categories; "fair"

---

[7] A GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

[8] Gresham states in his brief that Dr. Domb completed a Medical Source Statement in July 2011.  Doc. 15, pp. 11. Defendant however, believes Dr. Domb rendered this opinion in February 2011.  Doc. 16, pp. 6.  The administrative record also reflects a February 2011 date.  Tr. 25.  Looking at the opinion itself, Dr. Domb's handwriting on the Medical Source Statement is not entirely clear.  Tr. 705-06. However, during Gresham's July 2011 appointment, Dr. Domb's treatment notes reflect that she completed forms for the patient (Tr. 782), suggesting that the 2011 Medical Source Statement (Tr. 705-06) was completed in July 2011.

[9] The rating choices were: "unlimited/very good," "good," "fair," and "poor."  Tr. 705-06.

in 6 categories; and "good" in only 1 category.[10]  Tr. 705-06.  Dr. Domb did not rate any category as "unlimited/very good."  Tr. 705-06.  Dr. Domb supported her assessment with the fact that Gresham "suffers from PTSD related to Iraqui war experience."  Tr. 706.  Dr. Domb also drafted a letter in March 2012 listing Gresham's medications, noting that Gresham was under her care for PTSD, and stating her opinion that he is unable to work.  Tr. 858.

        b.      Consultative Examiner

*Wilfredo Paras, M.D.*

Dr. Paras evaluated Gresham in February 2011.  Tr. 708-09.  Dr. Paras summarized the history of Gresham's physical and mental illnesses.  Tr. 708.  He opined that Gresham suffered from PTSD, "which may limit his ability to perform work-related mental activities."  Tr. 709. Dr. Paras also stated, "[h]is general work limitation at this time is light work."  Tr. 709.

        c.      State Agency Reviewing

*Aracelis Rivera, Psy. D.*

On December 22, 2010, Dr. Rivera completed a Psychiatric Review Technique assessment and Mental Residual Functional Capacity assessment.  Tr. 70-75.  In the Psychiatric Review Technique assessment he opined that, even though Gresham's anxiety and affective disorders were severe, they did not meet the criteria of a listing.  Tr. 70.  Furthermore, he rated Gresham's restriction of activities of daily living as "mild," his difficulties in maintaining social functioning as "moderate," and his difficulties in maintaining concentration, persistence or pace as "moderate."  Tr. 70.  Gresham had no repeated episodes of decompensation.  Tr. 70.

Using a list of 17 categories, Dr. Rivera rated Gresham's mental residual functional capacity as "moderately limited" in 3 categories: (1) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) ability to

---

[10] The categories in which Dr. Domb rated Gresham are set forth in the text below under heading VI. A.

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) ability to respond appropriately to changes in the work setting.  Tr. 73-74.  He indicated there was "no evidence of limitation" in 8 categories, and found that Gresham was "not significantly limited" in 6 categories.  Tr. 73-74.  Dr. Rivera explained that Gresham had let his medications lapse for 30 days, but otherwise his PTSD symptoms were controlled.  Tr. 74.  He further noted that Gresham could perform a wide range of work tasks in a setting that does not impose meeting strict production quotas.  Tr. 74.  Dr. Rivera also explained that Gresham could function in a work setting where changes are infrequent.  Tr. 75.

### *Bruce Goldsmith, Ph. D.*

Dr. Bruce Goldsmith, a psychologist, evaluated Gresham in August 2011 and assessed Gresham's mental residual functional capacity using a list of 17 categories.  Tr. 116-17.  Dr. Goldsmith found that Gresham was "moderately limited" in 6 categories: (1) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) ability to interact appropriately with the general public; (4) ability to accept instructions and respond appropriately to criticism from supervisors; (5) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (6) ability to respond appropriately to changes in the work setting.  Tr. 116-17.  He found that Gresham was "not significantly limited" in 9 categories.  Tr. 116-17.  Finally, Dr. Goldsmith found there was "no evidence of limitation" in the remaining 2 categories.  Tr. 116-17.

Dr. Goldsmith supported his assessment by stating that Gresham's PTSD symptoms were controlled except for the time during which he let his medications lapse.  Tr. 117.   Dr. Goldsmith also explained that Gresham denied experiencing interpersonal problems in the workplace.  Tr. 117.  However, he stated that Gresham was socially isolated and had problems with anger management.  Tr. 117.  Dr. Goldsmith limited Gresham to "occasional and superficial interpersonal contact."  Tr. 117.  Finally, he explained that Gresham could function in a work setting where changes were infrequent.  Tr. 117.

**C.     Testimonial evidence**

  **1.     Gresham's testimony**

Gresham was represented and testified at the administrative hearing.  Tr. 26-57.  Gresham indicated that he lives alone in an apartment procured through the VA and HUD.  Tr. 32.  Gresham is receiving food stamps and has a clothing voucher from the VA.  Tr. 35, 55.  His mother helps him pay bills and buy anything else he needs.  Tr. 55.  He does not have any health insurance nor is he receiving worker's compensation or unemployment benefits.  Tr. 35.  Gresham stated that he no longer has a valid driver's license because he let it expire.  Tr. 33.

Gresham quit high school after the 11th grade to join the military, but he received his GED while he was in the service.  Tr. 34.  While in the military from 1977 to 1984 Gresham worked in administration. Tr. 35.  While in the National Guard from 1984 to 1986 he worked in the military police. Tr. 35.  Beginning in 2003 in Iraq, he worked with the medical combat unit and participated in 51 rogue missions.  Tr. 35.  Gresham was Medevaced home from Iraq in May 2004.  Tr. 40.

When Gresham got out of the military he received his license for private security.  Tr. 34.  In 2008 he began working for a security company.  Tr. 37, 38.  Within six months he was

promoted to supervisor.  Tr. 37.  Gresham stated that he began to have anger and aggression issues and was not sleeping so he went to the VA.  Tr. 37.  He stated that he was reprimanded for being aggressive toward his supervisors and other employees at work.  Tr. 39.  He was prescribed Zoloft.  Tr. 38.  Gresham stated that he resigned from the security company in early 2010.  Tr. 38-39.

In his applications for SSI and DIB Gresham stated that he became disabled on December 31, 2009.  Tr. 186, 190.  He testified that he chose this date "after I stated going to my psychiatrist, and she started pointing out problems, and diagnosed me, I just—I really, I really can't explain it. I just—that's when I just filed for it, because I wasn't able to find work. . . . And it seemed like it was just a downward spiral."  Tr. 40.

Gresham went on to describe his physical impairments.  Tr. 40.  He stated that he takes 900 milligrams each day of Gapatin for chronic low back pain.  Tr. 40-41.  He has had surgery on his right foot in the past and screws and pins were inserted.  Tr. 41.  He injured his left foot in Iraq when he jumped from a truck during an explosion.  Tr. 42.  Gresham testified that his feet are the main source of his pain.  Tr. 41.  Gresham completed some physical therapy but continues to feel pain in his back and feet and cannot walk very far.  Tr. 45.  He occasionally gets spasms and numbness in his legs which make it difficult for him to move, although he admits that his medications help manage the frequency of the spasms.  Tr. 53-54.

Gresham stated that his aggression keeps him from working.[11]  Tr. 49.  He does not like being around a lot of people.  Tr. 49.  He experiences nightmares frequently.  Tr. 49.  Gresham admits to isolating himself to "keep my aggressiveness to myself."  Tr. 50.  Gresham stated that, along with Gapatin, he takes Zoloft, Trechazone, Hydrotetrazine, and Presazine.  Tr. 40-41, 50.

---

[11] Gresham also stated that he has problems with his long-term memory.  Tr. 49.

Further, he is enrolled in a class for PTSD.[12]  Tr. 50.  Gresham stated that his medications keep him "drowsy," "laid back" and "passive," so when he takes them he does not venture out of the house often.  Tr. 52.  The medication makes him sleep during the day but he frequently cannot sleep during the night.  Tr. 53.  Gresham acknowledged going to AA meetings through the VA but he stopped because he did not want to be around others.  Tr. 56.

Gresham's average day at home involves watching television and sleeping.  Tr. 51, 53. He had been watching a lot of war stories but was now trying to avoid watching them; instead, he tries to watch sports or other programs on TV.  Tr. 51.  He talks to his mother every day, either over the phone or in person.  Tr. 51.  He also talks to his brothers over the phone fairly often.  Tr. 51.  He does not see or talk to his father often.  Tr. 51.  Gresham has a 29-year-old son who resides in Tennessee.  Tr. 51.  His relationship with his son is strained due to a physical altercation and, therefore, they do not talk often.  Tr. 51-52.  Gresham stated that, after he returned from Iraq, his fiancée left him because she did not like that he was sleeping with knives. Tr. 52. Gresham stated that he took a trip to Tennessee with his mother in December of 2011 to spend Christmas with his family.  Tr. 57.

### 2.  Vocational Expert's testimony

Vocational Expert ("VE") Gene Burkhammer testified at the hearing.  Tr. 58-62.  The VE described Gresham's past work.  Tr. 59.  Both the security guard and the security guard supervisor positions were light, semi-skilled jobs (SVP: 3).[13]  Tr. 59.

---

[12] Gresham indicated that he did not like the group class, so he is being moved to a one-on-one session with his psychiatrist.  Tr. 50.

[13] SVP refers to the DOT's listing of a specific vocational preparation (SVP) time for each described occupation. Social Security Ruling No. 00-4p, 2000 SSR LEXIS 8, *7-8 (Social Sec. Admin.  December 4, 2000).   Using the skill level definitions in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.  *Id.*

The ALJ asked the VE a series of hypothetical questions.  Tr. 60-62.  The ALJ first asked the VE to assume a hypothetical individual with the same age, education, and past work experience as Gresham who could perform a limited range of light work; with no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; frequent balancing; occasional stooping; frequent kneeling, frequent crouching, and frequent crawling; frequent foot controls bilateral.  Tr. 60.  Further, the individual could perform simple and more complex tasks in an environment with routine changes in work routine and "no work requiring negotiation, arbitration, or resolution of disputes between opposing parties."  Tr. 60.  Finally, the individual would be off task 5% of the time and there would be frequent contact with the general public, co-workers, and supervisors.  Tr. 60.  The VE indicated that the described individual would not be able to perform Gresham's past work.  Tr. 60.  However, the VE indicated that there would be other work available to the described individual, including (1) mail clerk, a light, unskilled job (SVP 2) with 700 jobs available locally, 7,000 in Ohio, and 180,000 nationally; (2) food service worker, a light, unskilled job (SVP 2) with 600 jobs available locally, 5,000 in Ohio, and 120,000 nationally; and (3) sales attendant, a light, unskilled job (SVP 2) with 600 jobs available locally, 5,000 in Ohio, and 100,000 nationally.  Tr. 60.

As for the second hypothetical, the ALJ asked the VE to assume an individual with the same limitations as the first hypothetical but to change the amount of time the individual is off task from 5% to 20%.  Tr. 61.  With that limitation, the VE indicated there would be no jobs available in the economy for the described individual.  Tr. 61.

Gresham's counsel then asked the VE to assume that the described individual would miss work at least three times a month.  Tr. 61.  The VE responded that, if the individual missed three days of work a month on a regular basis, that would exclude all work in the economy.  Tr. 61.

Referencing Exhibit 4F (Tr. 705-706, Dr. Domb's 2011 Medical Source Statement) Gresham's counsel then asked the VE to assume the limitations given in the ALJ's first hypothetical but to add that the individual should have no contact with the public, coworkers or supervisors (Tr. 61).  The VE responded that, with those limitations, there would be no jobs available to that individual.  Tr. 61.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[14] . . . .

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous

---

[14] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

period of at least twelve months, and his impairment meets or equals a listed impairment,[15] claimant is presumed disabled without further inquiry.

4.   If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[16] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors

to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his April 30, 2012, decision, the ALJ made the following findings:[17]

1.   Gresham meets the insured status requirements through September 30, 2012.  Tr. 13.

2.   Gresham has not engaged in substantial gainful activity since December 31, 2009, the alleged onset date.  Tr. 13.

---

[15] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

[16]  The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[17] The ALJ's findings are summarized.

3.      Gresham has the following severe impairments: post-traumatic stress disorder, degenerative disc disease of the lumbar spine, and remote fracture of the left big toe, status post-surgery.[18]  Tr. 13.

4.      Gresham does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 14-15.

5.      Gresham has the RFC to perform light work except that he cannot climb ladders, ropes or scaffolds.  He can occasionally climb ramps and stairs. He can perform frequent balancing, kneeling, crouching, and crawling, and occasional stooping.  He can use the lower extremities to operate foot controls on a frequent basis.  He can perform simple and more complex tasks in an environment with routine changes in work routine.  He cannot perform work requiring arbitration, negotiation, or confrontation, or resolution of disputes between opposing parties.  He would be off task 5% of the time.  Finally, he can have frequent contact with the general public, coworkers, and supervisors.  Tr. 15-18

6.      Gresham is unable to perform any past relevant work. Tr. 18.

7.      Gresham was born in 1957, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  Tr. 19.

8.      Gresham has at least a high school education and is able to communicate in English.  Tr. 19.

9.      Transferability of job skills is not material to the determination of disability.  Tr. 19.

10.     Considering Gresham's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, including mail clerk, food service worker, and sales attendant.  Tr. 19-20.

Based on the foregoing, the ALJ determined that Gresham had not been under a disability within the meaning of the Social Security Act from December 31, 2009, through the date of his decision.  Tr. 20.

---

[18] The ALJ also noted that Gresham had a history of substance abuse, but that it had been in remission since 2009. Tr. 14.  The ALJ concluded that this remote substance abuse had not caused a limitation in Gresham's ability to perform basic work activity and was therefore non-severe.  Tr. 14.

## V. Parties' Arguments

**A.    Gresham's arguments**

Gresham presents two arguments.  First, Gresham argues that the ALJ failed to follow the treating physician rule.  Doc. 15, pp. 13-14.  He contends that, because the ALJ failed to consider Dr. Jane Domb's 2011 Medical Source Statement, the ALJ's decision is not supported by substantial evidence.  Doc. 15, pp. 13-14.

Second, Gresham argues that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ relied on an incomplete VE hypothetical (Doc. 15, pp. 16-17); (2) the ALJ's RFC finding that he is capable of "frequent  interpersonal contact" is not supported by substantial evidence (Doc. 15, pp. 17-18); and (3) the ALJ's RFC finding contradicts the ALJ's conclusion that Gresham has "moderate" limitations in concentration, persistence, or pace (Doc. 15, pp. 19-20).

**B.    Defendant's arguments**

In response, Defendant asserts that Dr. Domb's 2011 opinion assesses work preclusive limitations which is the same thing as her March 2012 opinion wherein she concluded Gresham was unable to work.  Doc. 16, pp. 10-11.  Thus, the Commissioner argues that, since the ALJ addressed the March 2012 opinion, Gresham's argument with respect to the 2011 opinion is meaningless.  Doc. 16, pp. 10-11.  Defendant also argues that an ALJ does not have to accept or give controlling weight to the opinion of a medical source if that opinion is inconsistent with other evidence or not well supported or if it is on an issue reserved to the Commissioner.  Doc. 16, pp. 11.

With respect to Gresham's arguments regarding the VE hypothetical and RFC, Defendant asserts that the ALJ inadvertently included the word "confrontation" in the RFC and, in any event, the ALJ's failure to include the word "confrontation" in his hypothetical to the vocational

expert constitutes harmless error.  Doc. 16, pp. 14.  Defendant also asserts that the ALJ's limitation reducing Gresham's interpersonal contact from "constant" to "frequent" is supported by substantial evidence.  Doc. 16, pp. 15.  Finally, Defendant asserts that the ALJ's finding that Gresham has "moderate" limitations in concentration, persistence, or pace is not inconsistent with his overall RFC or the VE hypothetical because it is a finding of severity, not an RFC determination.  Doc. 16, pp. 16-17.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.    Since the ALJ failed to acknowledge or discuss Dr. Domb's 2011 opinion, the ALJ did not consider all relevant medical evidence or sufficiently explain the weight assigned to Dr. Domb's opinion under the treating physician rule and the Court is unable to find that the Commissioner's decision is supported by substantial evidence.**

Gresham argues that the ALJ violated the treating physician rule when he failed to consider or give "great deference" to Dr. Domb's 2011 opinion.  Doc. 15, pp. 14.  Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).

If controlling weight is not provided, an ALJ must apply certain factors to determine what weight should be given to the treating source's opinion, and the Commissioner's regulations also impose a clear duty on an ALJ always to give good reasons in the notice of determination or decision for the weight given to treating source opinions.[19]  *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)); *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) .  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)) (internal quotations omitted).  "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights [and] [i]t

---

[19] The factors to be considered are: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors which tend to support or contradict the opinion.  *Bowen*, 478 F.3d at 747; 20 C.F.R. §§ 404.1527(d), 416.927(d).

is intended 'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that he is not.'" *Id.* at 937-938 (citing *Wilson*, 378 F.3d at 544).  Moreover, "the requirement safeguards a reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the treating physician rule.'" *Id.* at 938 (citing *Wilson*, 378 F.3d at 544-545).  An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole*, 661 F.3d at 939-940 (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009) (internal quotations omitted)).  Inasmuch as 20 C.F.R. § 404.1527(c)(2) creates important procedural protections for claimants, failure to follow the procedural rules for evaluating treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits.  *Wilson*, 378 F.3d at 546-547.

In explaining his decision to give "little weight" to Dr. Domb's 2012 opinion, the ALJ stated:

> As for the opinion evidence, the undersigned has considered the opinion of treating psychiatrist, Jane A. Domb, M.D., who has followed the claimant's care since late 2010. Dr. Domb opined that the claimant "is not able to work" due to PTSD.  (3/19/2012, Exhibit 11F, p.1).  Normally, a treating specialist's opinion would be entitled to controlling weight, but this opinion is wholly inconsistent with the corresponding mental health treatment notes.  Dr. Domb consistently assigned a [GAF] in the range of 63 to 65, which is indicative of some mild symptoms or mild difficulty in functioning.  This GAF is inconsistent with Dr. Domb's opinion that the claimant cannot work.  Further, the treating source does not state any specific work related limitations, but rather makes a vague statement that the claimant cannot work. The determination of disability is reserved to the Commissioner.  Therefore, the undersigned can afford little weight to this opinion.  The undersigned gives weight to Dr. Domb's GAF assessments throughout the record, as they were more aligned with the objective examination findings.

Tr. 17.  The ALJ's explanation as to why he afforded little weight to Dr. Domb's contention that Gresham cannot work is incomplete because, before deciding that an opinion is inconsistent with the other medical evidence in the record, all the available medical evidence must first be taken into account.  *See Gayheart*, 710 F.3d at 378 ("[A]n ALJ must consider all relevant evidence in the case record.").

Here the ALJ did not consider all relevant evidence.  The ALJ did not even mention Dr. Domb's 2011 opinion anywhere in his decision.  In that opinion, Dr. Domb evaluated Gresham's mental capacity using a checklist consisting of 21 categories.  Tr. 705-06.  Dr. Domb concluded that Gresham has "poor" ability to: (1) maintain attention and concentration for extended periods of 2 hour segments; (2) maintain regular attendance and be punctual within customary tolerance; (3) deal with the public; (4) relate to co-workers; (5) interact with supervisors; (6) function independently without special supervision; (7) work in coordination with or proximity to others without being unduly distracted or distracting; (8) deal with work stress; (9) complete a normal workday and work week without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (10) understand, remember and carry out complex job instructions; (11) understand, remember and carry out detailed, but not complex job instructions; (12) socialize; (13) behave in an emotionally stable manner; and (14) relate predictably in social situations.  Tr. 705-06.

Dr. Domb also concluded that Gresham has "fair" ability to: (1) follow work rules; (2) use judgment; (3) respond appropriately to changes in routine settings; (4) understand, remember and carry out simple job instructions; (5) manage funds/schedules; and (6) leave home on his own.  Tr. 705-06.  She rated him as "good" in only one category: ability to maintain appearance.  Tr. 706.

The ALJ stated that Dr. Domb did not state any specific work related limitations and instead only made a vague statement that Gresham cannot work.  Tr. 17.  Dr. Domb's 2011 opinion is more than a vague statement that Gresham cannot work.  Tr. 705-06.  She identified specific categories of work-related abilities in which she found him to be "poor" or only "fair."  Tr. 705-06.  She supported her opinion with the fact that Gresham suffered from "PTSD related to Iraqui war experience."  Tr. 706.  The ALJ claims that Dr. Domb consistently assigned GAF scores in the range of 63-65 (Tr. 17), although the record appears to reflect that Dr. Domb assigned a GAF in that range only once, in September 2011 (Tr. 796-97).  Notably, Dr. Domb assigned a GAF score of 55 in March 2012—which the ALJ overlooked.  Tr. 860-62.  Furthermore, Dr. Domb was not the only doctor to assign a GAF below the 63-65 range;  psychiatrist Dr. Mahfoud assigned Gresham a GAF of 55 in September 2010.  Tr. 756.   The foregoing demonstrates that the ALJ not only ignored Dr. Domb's 2011 opinion, but also that his reasons for discounting the 2012 opinion may not be fully supported by the record.  Moreover, a review of Dr. Domb's two opinions shows that they are not the same opinion.  Therefore, Defendant's contention that the ALJ did not need to consider the 2011 mental capacity assessment because it "state[s] the same thing" as the March 2012 letter is not persuasive.  Doc. 16, pp. 11.

Because the ALJ failed to consider Dr. Domb's 2011 opinion, he failed to assign weight to that opinion and/or provide any reason, let alone "a good reason" as to why her opinion should be given less than controlling weight.  Since the ALJ overlooked and/or failed to discuss a treating physician opinion, the Court is unable to conclude that there is substantial evidence to support the ALJ's decision.  *Cole*, 661 F.3d at 939-940; *see also Wilson*, 378 F.3d at 546-547.[20]

---

[20] Harmless error may apply in some treating physician situations. Harmless error will apply only (1) if the opinion is so "patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the

B.    **Other Claims**

Gresham also argues that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ relied on an incomplete VE hypothetical (Doc. 15, pp. 16-17); (2) the ALJ's finding that he is capable of "frequent interpersonal contact" is not supported by substantial evidence (Doc. 15, pp. 17-18); and (3) the ALJ's RFC finding contradicts his holding that Gresham has "moderate" limitations in concentration, persistence, or pace (Doc. 15, pp. 19-20).  This Opinion does not address Gresham's additional arguments because, on remand, the ALJ's evaluation of Dr. Domb's 2011 opinion may impact his findings with respect to Gresham's RFC and the questions posed to the VE.[21]  *See Trent v. Astrue*, Case No. 1:09CV2680, 2011 U.S. Dist. LEXIS 23331, at *19 (declining to address the plaintiff's remaining assertion of error because remand was already required and, on remand, the ALJ's application of the treating physician rule might impact his findings under the sequential disability evaluation).

---

opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation."  *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x. 543, 551 (6th Cir. 2010). Here, however, Defendant does not raise the issue and it does not appear that harmless error would be found.

[21] Although the Court finds it unnecessary to address Gresham's second argument, the Court notes that, considering the discrepancy between the RFC and the VE hypothetical and the fact that the burden shifts to the Commissioner at Step Five, the ALJ's omission of the word "confrontation" from the VE hypothetical and/or insertion of the word "confrontation" in the RFC was most likely not harmless error.  If an ALJ relies on a VE's testimony in response to a hypothetical, that hypothetical must accurately portray the claimant's limitations.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). On remand, the Commissioner will have an opportunity to pose a proper question to the VE consistent with Gresham's RFC.

## VII. Conclusion

For the reasons set forth herein, the Court **REVERSES and REMANDS** the

Commissioner's decision for further proceedings consistent with this Opinion and Order.[22]

Dated:  July 30, 2014

_____
Kathleen B. Burke
United States Magistrate Judge

---

[22] This opinion should not be construed as requiring a determination on remand that Gresham is disabled.